IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

REBECCA ISBELL,                )
                               )
          Plaintiff,           )
                               )
v.                             ) Case No. CIV-18-363-KEW
                               )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
          Defendant.           )

**OPINION AND ORDER**

Plaintiff Rebecca Isbell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 45 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked

in the past as a waitress and nursery school attendant. Claimant alleges an inability to work beginning September 1, 2009 due to limitations resulting from osteoarthritis, fibromyalgia, severe depression, and anxiety.

**Procedural History**

On February 4, 2016, Claimant protectively filed for Supplemental Security Income under Title XVI (42 U.S.C. § 1381 *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 22, 2017, Administrative Law Judge ("ALJ") James Bentley conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from McAlester, Oklahoma. On October 5, 2017, the ALJ issued an unfavorable decision. On September 5, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity

4

("RFC") to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) his consideration of various limitations and impairments at step five; (2) failing to properly consider Claimant's subjective statements.

**Step Five Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, osteoarthritis, fibromyalgia, anxiety and depression, degenerative disc disease of the lumbar spine, hypertension, gastroparesis, osteopenia, gout, vertigo, pelvic floor pain, and chronic fatigue syndrome. (Tr. 15). The ALJ concluded Claimant could perform light work except that Claimant would have the ability to understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to carry out and complete simple and detailed work tasks with routine supervision. She was found to be able to relate to supervisors and co-workers on a superficial work basis. She should have no work-related contact with the general public. Claimant could occasionally stoop, kneel, crouch, and crawl but must avoid unprotected heights and dangerous moving machinery. Claimant was given a sit/stand option defined as a

brief positional change from sitting to standing and vice versa with no more than a change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production. Claimant could not climb ladders, ropes, and scaffolding. (Tr. 18).

After consulting with a vocational expert, the ALJ concluded Claimant was capable of performing the representative jobs of inspector/hand packager, bench assembler, and electrical accessories assembler, all of which were found to exist in sufficient numbers in the national economy. (Tr. 22). As a result, the ALJ concluded Claimant was not under a disability since January 15, 2016, the date of the filing of the application. Id.

Claimant contends the ALJ failed to adequately consider the impact of various limitations contained in the RFC upon the questioning of the vocational expert at step five. Claimant first attacks the questioning pertaining to the sit and stand option which required that Claimant be able to change position from sitting to standing and back every 20 minutes without leaving the workstation. The ALJ included this limitation in the hypothetical question posed to the vocational expert. (Tr. 65-66). The vocational expert testified as to the existence of three jobs to

6

accommodate Claimant's RFC – inspector and hand packager, bench assembler, and electrical accessories assembler, the last for which the ALJ reduced the available job pool by 50% due to the sit/stand option. She testified that "[t]he DOT [*Dictionary of Occupational Titles*] does not address the sit-stand option. That's based on my experience in job placement." (Tr. 66-67). Claimant contends that the ALJ should have asked follow up questions of the vocational expert to insure that the available jobs in the other two identified occupations were not also degraded due to the sit/stand option.

Claimant assumes that the other two jobs would be equally reduced by 50% and, therefore, the available jobs to Claimant would be so low as to constitute an insufficient number. Claimant assumes too much. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical

7

questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

The ALJ accurately included all of Claimant's limitations in the RFC in his hypothetical questioning of the vocational expert. Follow up questions were unnecessary since the vocational expert made clear that the reduction in the job base only applied to the third job identified – electrical accessories assembler. This Court need not engage in an exercise in tortured second guessing to ascertain the vocational expert's meaning. She based her reduction in the single job upon her experience. That is sufficient.

Even if by some stretch of the imagination the vocational expert forgot to apply the same limitation to the other two jobs identified, the jobs existed in sufficient numbers if they were reduced by an equal 50% as the expert testified on the third job. The resulting number for all three jobs would be 132,000 (inspector and hand packager – 41,000; bench assembler – 50,000; electrical accessories assembler – 41,000) – an amount well within the acceptable number of available jobs recognized in this Circuit.

8

*See*, Rogers v. Astrue, 2009 WL 368386, *4 (10th Cir.)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability).

Claimant also asserts that the ALJ failed to include the "full impact" of her anxiety and depression in the hypothetical questioning of the vocational expert. The ALJ discussed in detail Claimant's subjective statements regarding the limitations imposed by her depression and anxiety. He noted she does not like to get out of bed if she knows she has to leave the house, she cannot be in groups of people, and she has a hard time talking with more than one or two people. She lives with her family and cares for her son who has Asperger's syndrome. (Tr. 18). The ALJ also related the medical record from her treating physician, Dr. Patrick Sullivan. He performed psychiatric evaluations with Claimant's overall physical examinations. They were largely normal. (Tr. 444, 493, 496, 498, 500, 502, 505, 507, 509, 512, 515, 518, 520, 522, 524, 526, 529, 531, 533, 535, 537, 580). Claimant did prove to be "anxious, agitated" on one visit. (Tr. 491).

Claimant also received treatment at Green Country which improved her mood with medication. (Tr. 20, 300, 311). The ALJ

included a discussion of these treatment records and referenced the Green Country records from January of 2016 which indicated Claimant was experiencing episodes of anxiety and depression. However, the record also indicated that Claimant agreed to her treatment plan and the professionals at Green Country believed Claimant would benefit from the plan. (Tr. 313-15). The Court would note that these documents are Claimant's "Treatment Plan" as opposed to the other documents from Green Country which are "Progress Notes" and indicate Claimant is "very happy" with Cymbalta with an "OK" mood, relief from stress due to the holidays, slept well, and denied any suicidal, homicidal, or hallucinations. (Tr. 311).

Claimant suggests that the ALJ should at least have imposed limitations to simple tasks and not detailed tasks in the RFC. The RFC, however, is supported by the state agency physicians' opinions that found Claimant could perform simple and some complex tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the public, and could adapt to a work situation for superficial work-related purposes. (Tr. 21, 78-79, 91-92).

"[R]esidual functional capacity consists of those activities

10

that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. The decision indicates that the ALJ adequately considered Claimant's depression and anxiety, including the Treatment Plan from Green Country. The ALJ's reliance upon the state agency opinions supported his RFC.

Claimant also asserts the ALJ failed to incorporate a moderate limitation in social functioning and moderate limitation in concentration, persistence, or pace in his RFC. These findings were made in connection with the "paragraph B" criteria which the ALJ evaluated at step three to determine whether Claimant met or equaled a listing. (Tr. 17). The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013). It was not error for the ALJ to fail to incorporate the "paragraph B" findings into the RFC or the hypothetical questioning of the vocational expert.

Claimant also contends that the ALJ failed to include the "full impact" of all of his physical impairments into the hypothetical questioning of the vocational expert. Claimant first

12

asserts that the effects of her chronic pain were not adequately considered at step two as a severe impairment. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the

13

existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's pain in the evaluation of the subsequent steps. (Tr. 16-21). Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include a specific severe impairment for pain does not constitute reversible error.

**Credibility Determination**

Claimant contends the ALJ improperly evaluated the credibility of her subjective statements surrounding her

14

impairments. While Claimant concentrates upon the insufficiency of the boilerplate credibility language in the ALJ's decision, she fails to recognize that the ALJ includes a discussion of the inconsistency of her statements of limitation in light of the medical record throughout the decision. (Tr. 18-21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve

15

pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's subjective statements.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2020.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma

16